IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

| | |
|---|---|
| WILMER RAMIRES, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. PX-24-02636 |
| ) | |
| J&D PLUMBING OF DC, LLC, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION GRANTING THE PARTIES'
JOINT MOTION TO APPROVE FLSA SETTLEMENT AGREEMENT**

Plaintiffs Wilmer Ramires, Evin Adonay, Israel Garcia, Gustavo Jimenez, Jorge Jimenez, and Gregorio Luna filed suit in the Circuit Court of Prince George's County against J&D Plumbing of DC, LLC ("JD Plumbing" or "employer"), Breeden Mechanical, Inc. ("Breeden"), and CCG Residential ("CCG"), alleging violations of: the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*; the Maryland Wage and Hour Law ("MWHL"), Md. Code. Ann., Labor & Empl. §§ 3-401 *et seq.*; and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3-501 *et seq.* (ECF Nos. 1, 5, 7, 9). Thereafter, the matter was removed to federal court. (*Id*). Defendants CCG, Breeden and JD Plumbing responded to the Complaint. (ECF Nos. 10, 14, 15, 28, 29). In addition, the case was referred to the undersigned for mediation, and several calls related thereto occurred. (ECF Nos. 25, 32, 34, 35, 42, 43, 44).

Subsequently, an Amended Complaint was filed, which added Jason Santos as a Plaintiff. (ECF No. 47 "Amended Complaint").[1] In brief, the Amended Complaint alleges that Defendants JD Plumbing and CCG failed to pay regular and overtime wages to Plaintiffs Ramires, Adonay,

---

[1] The procedural history of this case is set forth in a Letter Order issued by the Hon. Paula Xinis, ECF No. 46, and in the docket sheet.

Garcia, G. Jimenez, J. Jimenez, Luna and Santos (hereinafter "Plaintiffs"), in violation of federal and state law. (ECF No. 47, ¶¶ 4, 17, 18, 26-53).

On May 2, 2025, a "Motion for Approval of Settlement Agreement," ("Joint Motion"), (ECF No. 49), was filed by Plaintiffs and Defendants Breeden and CCG.[2] Attached in support thereto were a copy of the Settlement Agreement ("Agreement") and declarations from counsel related to attorneys' fees. (ECF Nos. 49-1 through 49-3). The Agreement is only signed by Plaintiffs and a representative of Defendant Breeden. (ECF No. 49-1). On September 12, 2025, the case was referred to the undersigned by the Hon. Paula Xinis for review and approval of the Joint Motion. (ECF No. 50).

On October 9, 2025, the undersigned held a telephone conference related to the Joint Motion. (ECF No. 52). For the reasons articulated on the call, the parties were directed to file a supplemental joint motion for approval of settlement.[3] (ECF No. 53). On October 22, 2025, a "Joint Consent Supplement to the Motion for Approval of Settlement Agreement," ("Supplemental Motion"), (ECF No. 54), was timely filed by Plaintiffs and Defendants JD Plumbing, Breeden and CCG (collectively "Defendants"). Attached in support thereto was a document called a "Joinder Agreement." The Joinder Agreement is intended as a supplement to the Agreement and reflects that Defendants JD Plumbing and CCG are now signatories to the Agreement.

The undersigned has considered the Agreement, declarations, Supplemental Motion, and Joinder Agreement. (ECF Nos. 49, 49-1 through 49-3, 54, 54-1). As set forth herein, the Court finds that the settlement amount and terms, including the payments to Plaintiffs and to the attorneys

---

[2] On March 26, 2025, the district court dismissed Defendant Breeden from this case. *See* docket entry in between ECF Nos. 47-48. However, Defendant Breeden had filed a crossclaim against Defendant JD Plumbing. (ECF No. 15). Defendant Breeden is a party to the signed settlement agreement under review by the undersigned.
[3] The undersigned addressed several issues with the Joint Motion, including the fact that Defendants JD Plumbing and CCG were not parties to the Agreement.

for their fees, are fair and reasonable given the facts of this case. Accordingly, the Joint Motion is granted.

I. **DISCUSSION**

The Agreement releases and discharges "any and all claims that the Plaintiffs have or may have had against Breeden, CCG, and J&D [Plumbing]." (ECF No. 49-1, pp. 1, 3). Per the Joinder Agreement, Defendants JD Plumbing and CCG acknowledge that they have "become parties to the [Agreement] and shall be fully bound by, and subject to, all of the covenants, terms and conditions of the [Agreement] as though an original party thereto." (ECF No. 54-1, p. 1). The total amount of the settlement is $140,000 further broken down as follows: (a) $15,000 payable to each Plaintiff (a total of $105,000); and (b) $35,000 payable to Plaintiffs' attorneys for their fees and costs. (ECF No. 49-1, pp. 3, 4).

**A. Background on the FLSA, *Bona Fide* Dispute, Fairness and Reasonableness**

Congress enacted the FLSA to protect workers from receiving subminimum wages and/or working overtime hours without pay, which could result from the unequal bargaining power that frequently exists between employers and employees. *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 116 (1946); *Chao v. Gotham Registry, Inc.*, 514 F.3d 280 (2nd Cir 2008). Thus, the FLSA's provisions are mandatory and generally not subject to bargaining, waiver, or modification by contract or settlement. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945).

Two exceptions to the rule against settlement or compromise have evolved by statute and caselaw i.e., FLSA rights can be waived with: (a) the supervision of the U.S. Department of Labor; or (b) judicial approval of the settlement. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982).

Although the Fourth Circuit has not addressed the factors to be considered in approving FLSA settlements, "district courts in this circuit typically employ the considerations set forth by the Eleventh Circuit in *Lynn's Food Stores*." *Saman v. LBDP, Inc.*, No. DKC-12-1083, 2013 WL 2949047, at *1, 2 (D. Md. June 13, 2013); *Lopez v. NTI, LLC*, 748 F. Supp. 2d 471, 478 (D. Md. 2010)). The settlement must "reflect[] a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions," which includes findings with regard to: (1) whether there are FLSA issues actually in dispute; (2) the fairness and reasonableness of the settlement in light of the relevant factors, including, where applicable, Fed. R. Civ. P. 23 factors; and (3) the reasonableness of the attorneys' fees, if included in the agreement. *Saman*, *supra*, at *3-4. (citing *Lynn's Food Stores*, 679 F.2d at 1355); *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 08-1310, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009); *Lane v. Ko-Me, LLC*, No. DKC-10-2261, 2011 WL 3880427, at *2–3 (D. Md. Aug. 31, 2011))(emphasis supplied).

### B. *Bona Fide* Dispute

The Court's determination is grounded in its review of the pleadings and representations in the proposed settlement agreement. *Duprey v. Scotts Co. LLC*, 30 F. Supp. 3d 404, 411 (D. Md. 2014, 30 F. Supp. 3d at 408 (citing *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08cv1310 (AJT/JFA), 2009 WL 3094955, at *1, 16–17 (E.D. Va. 2009)). In the Joint Motion and the Supplemental Motion, the parties represent that a dispute exists about whether the Defendants violated federal and state law, and assert that their respective positions are strongly supported by the facts and the law. (ECF No. 49, pp. 9, 10; ECF No. 54, ¶¶ 11, 12).

### C. Fairness & Reasonableness

The Court considers several factors in determining the reasonableness and fairness of an FLSA settlement agreement: (1) the extent of discovery; (2) the stage of the proceedings, including

4

the complexity, expense, and foreseeable duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who represented the plaintiffs; (5) the opinions of class counsel and class members after receiving notice of the settlement whether expressed directly or through failure to object; and (6) the probability of the plaintiffs' success on the merits. *Yanes v. ACCEL Heating & Cooling, LLC*, Civ. No. PX-16-2573, 2017 WL 915006, at *2 (D. Md. Mar. 8, 2017) (citing *Lomascolo*, 2009 WL 3094955, at *10).

Regarding the first factor, per the request of the parties, discovery was stayed so as allow the parties to pursue mediation. (ECF Nos. 21, 24). However, "the parties spent months engaging in informal discovery" and exchanged numerous documents. (*See* ECF No. 49, pp. 10, 11). Regarding the second factor, the parties represent in the Agreement that they negotiated this resolution:

> "in order to avoid the expense and burden of further litigation, and having fully investigated and assessed the risks of continued litigation, Plaintiffs and their counsel believe that the relief provided to Plaintiffs and the procedures set forth in [the] Agreement for the distribution of relief provide a fair, flexible, speedy, cost-effective, and assured monetary settlement […]."

(ECF No. 49-1, p. 2). In addition, the parties represent that there is an indemnification agreement between Defendant CCG and Defendant/Cross-Claimant Breeden, but to avoid "collateral litigation" between them "Breeden agreed to pay the settlement, and not CCG." (ECF No. 54, ¶ 15).

With respect to the third factor, the Court does not have any evidence of fraud or collusion in the settlement. Regarding the fourth factor, the parties are represented by counsel who are experienced in FLSA matters, specifically in wage-and-hour litigation. (ECF No. 49-2, ¶¶ 2, 4-6; ECF No. 49-3, ¶¶ 3, 5, 6). The fifth factor is not relevant here, given that the case only involves seven individuals and not a class action. *Lomascolo*, 2009 WL 3094955, at *10.

Regarding the sixth factor, the parties agree that $140,000 as the settlement amount, which includes attorneys' fees and costs, "provides a benefit to the Plaintiffs, is consistent with and in promotion of the protections afforded to Plaintiffs by the FLSA and the MWPCL, and avoids continued costly litigation of difficult and contentious issues." (ECF No. 49-1, p. 2). In addition, the parties represent that they agree that the settlement amount "reflects an accurate settlement value for this case." (ECF No. 54, ¶ 14).

**D. Attorneys' Fees**

The FLSA guarantees the award of reasonable attorneys' fees to prevailing plaintiffs. 29 U.S.C. § 216(b) (2008); *Randolph v. Powercomm Construction, Inc.*, No. 16-3270, 2017 WL 5032476, at **1, 2 (4th Cir. Oct. 31, 2017). The amount awarded for fees and costs is discretionary. *Burnley v. Short*, 730 F.2d 136, 141 (4th Cir. 1984); s*ee also Randolph v. Powercomm Construction, Inc.*, 715 Fed. App'x 227, 230 (4th Cir. 2017).

To calculate the amount to be awarded in attorneys' fees, a court must determine what is reasonable. *Hensley v. Eckerhart et al.*, 461 U.S. 424, 433 (1983). To do so, courts engage in a three-step process. First, a court must calculate the lodestar, which is "the number of reasonable hours expended [multiplied by] a reasonable [hourly] rate." *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013). To determine whether the hours and rates are reasonable, the Fourth Circuit has held that a court's discretion should be guided by the factors set forth in *Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). The twelve factors ("*Johnson* factors") are:

> (1) the time and labor expended;
> (2) the novelty and difficulty of the questions raised;
> (3) the skill required to properly perform the legal services rendered;
> (4) the attorney's opportunity costs in pressing the instant litigation;
> (5) the customary fee for like work;
> (6) the attorney's expectations at the outset of the litigation;

>(7) the time limitations imposed by the client or circumstances;
>(8) the amount in controversy and the results obtained;
>(9) the experience, reputation, and ability of the attorney;
>(10) the undesirability of the case within the legal community in which the suit arose;
>(11) the nature and length of the professional relationship between attorney and client; and
>(12) attorneys' fees awards in similar cases.

*McAfee*, 738 F.3d at 88, n.5.

As set forth above, the Agreement provides for attorneys' fees and costs in the amount of $35,000. (ECF No. 49-1, p. 3). In support of its request for attorneys' fees, Plaintiffs provided the declarations of James Rubin and Aaron Uslan. (ECF Nos. 49-2, 49-3). According to Mr. Rubin's declaration, his hourly rate is $475 per hour. (ECF No. 49-2, ¶¶ 8-10). Mr. Rubin has been practicing law in the State of Maryland since December 1996 (nearly 29 years), and his hourly rate of $475.00 falls within a range identified for attorneys who have been practicing as long as Mr. Rubin has. *See* ECF No. 49-2, ¶ 2; Local Rules, App. B, ¶ 3.e. (D. Md. 2025).[4] Mr. Rubin declares that he is aware of the fees customarily charged in the local area for legal services in the area of employment law and, in his opinion, "an hourly rate of $475 is fully consistent with the prevailing rate in this jurisdiction." (ECF No. 49-2, ¶ 9).

Mr. Rubin declares that Mr. Uslan's hourly rate is $350 per hour. (ECF No. 49-2, ¶¶ 5, 6). Mr. Uslan has been practicing law in the State of Maryland since December 2010 (nearly 15 years), and his hourly rate of $350.00 falls within the Guidelines. *See* ECF No. 49-3, ¶¶ 3, 6; L. R. App.

---

[4] To determine the reasonableness of an attorney's hourly rate, courts analyze whether the rate sought is consistent with the rate that prevails in the community for "similar legal services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 890 n.11 (1984). A court may rely upon its knowledge of the Maryland legal market rates. *De Paredes v. Zen Nails Studio, LLC*, 134 F.4th 750, 2025 WL 1107398, at *2 (4th Cir. 2025). In this District, that "market knowledge" is embedded in United States District Court for the District of Maryland: Local Rules, Appendix B, Rules and Guidelines for Determining Attorneys' Fees in Certain Cases. ("*the Guidelines*" or "*Loc. R. App. B*"). *See Chaten v. Marketsmart LLC,* Civ. No. PX-19-1165, 2020 WL 4726631, at *3 (D. Md. Aug. 14, 2020)(citing *Gonzalez v. Caron*, Civ. No. CBD-10-2188, 2011 WL 3886979, at *2 (D. Md. Sept. 2, 2011)).

7

B, ¶ 3.c. Mr. Uslan declares that he is aware of the fees customarily charged in the local area for legal services in the area of employment law and, in his opinion, the hourly rate he charged "is fully consistent with the prevailing rate in this jurisdiction." (ECF No. 49-3, ¶ 8).

The Fourth Circuit has recently held that a court "may consider, but is not bound by" the Guidelines when determining whether an hourly rate is reasonable. *De Paredes,* 2025 WL 1107398, at *2 (4th Cir. 2025)(citing *Newport News Shipbuilding & Dry Dock Co. v. Holiday*, 591 F.3d 219, 229 (4th Cir. 2009)). Thus, when a court is faced with a fee petition and is determining whether a fee rate is "reasonable," it may not treat the Guidelines as "'presumptively reasonable' and require special justification to deviate from [them]." *De Paredes*, 2025 WL 1107398, at *2 (further citations omitted). Rather, a court "must consider all relevant evidence to determine 'the prevailing market rates in the relevant community'. . . including lawyer affidavits, fee awards in similar cases, general surveys, fee matrices, and even its 'own personal knowledge.'" *De Paredes*, 2025 WL 1107398, at *2 (further citations omitted). Here, considering the attorney declarations and all other relevant evidence, the Court finds that the hourly rates sought are reasonable.

The Court next analyzes the hours expended to determine if they are reasonable. According to Mr. Rubin's declaration, he billed a total 44 hours at his hourly rate ($475.00) for a total fee of $20,900. (ECF No. 49-2, ¶¶ 8-10). Mr. Rubin asserts that he only seeks reimbursement for 44 hours' worth of services rendered "after an exercise of billing discretion." (ECF No. 49-2, ¶ 8). It is not clear to the Court how many hours, if any, Mr. Rubin did not bill to this case as a discount to the Plaintiffs. In addition, Mr. Rubin did not provide "a detailed description of the work performed broken down by hours or fractions thereof expended on each task." *See* L.R. 109.2(b). Next, Mr. Rubin declares that Mr. Uslan billed a total of 40.25 hours at his hourly rate ($350.00) for a total fee amount of $14,087.50. (ECF No. 49-2, ¶¶ 5, 6). Mr. Rubin asserts that Mr. Uslan

only seeks reimbursement for 40.25 hours in this case "after the exercise of billing discretion." (ECF No. 49-2, ¶ 6). It is not clear to the Court how many hours, if any, Mr. Uslan did not bill to this case as a discount to the Plaintiffs. In addition, Mr. Uslan did not provide "a detailed description of the work performed broken down by hours or fractions thereof expended on each task." *See* L.R. 109.2(b). Ultimately, then, the Court applied "rough justice," and did not perform a perfect audit; the Court "[took] into account [its] overall sense of [this] suit. . .in calculating and allocating an attorney's time." *Guillen v. Armour Home Improvement, Inc. et al.*, Civ. No. DLB-19-2317, 2024 WL 1346838, at *2 (D. Md. Mar. 29, 2024)(quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)). The Court finds the hours to be reasonable given all of the evidence before it. Moreover, the total amount of attorney's fees sought does not exceed the amount that the Plaintiffs are being paid as a group. In sum, the amount sought is reasonable.

Finally, the Rubin declaration also lists costs in the amount of $439.12 (ECF No. 49-2, ¶ 11). In addition, according to the Rubin declaration, the amount of attorneys' fees and costs comes to a total of $35,426.62[5]. *See* ECF No. 49-2, ¶¶ 6, 10, 11. In executing the Agreement, the parties only agreed to attorneys' fees and costs in the amount of $35,000. Accordingly, the Court finds $35,000 to be fair and reasonable, and does not award any amount that exceeds this total.

## II. CONCLUSION

In sum, the Court hereby grants the Joint Motion and approves the settlement between Plaintiff and Defendants (hereinafter, collectively referred to as "the Parties") based on the following findings:

1.      The Parties have provided the Court with sufficient information to conclude that the settlement is fair and reasonable and is an equitable compromise of disputed facts and claims.

---

[5] $14,087.50 (Mr. Uslan's fee) + $20,900 (Mr. Rubin's fee) + $439.12 (costs) = $35,426.62.

In addition, the settlement agreement represents a fair and reasonable resolution of a *bona fide* dispute under the FLSA according to the factors that have been cited in other actions before the District Court.

      2.      The Court finds that the settlement was the product of arms' length negotiations between Counsel for the Parties, who are experienced in the field of FLSA litigation.

      3.      The attorneys' fees and costs to be paid under the Settlement Agreement are separately stated and Counsel has provided sufficient information to permit the Court to conclude that the fees and costs represent reasonable amounts incurred due to reasonable hourly rates. The amount allocated for attorneys' fees and costs bears a reasonable relationship to the amount being paid to the Plaintiffs under the Settlement Agreement.

      A separate Order follows.

Dated: October 29, 2025                                                   /s/
                                                                     The Honorable Gina L. Simms
                                                                     United States Magistrate Judge